IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3139-FL

| | | |
|---|---|---|
| CASEY RAFAEL TYLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| KENNETH LASSITER, VAN MCCULLOUGH, AVERELL BLANKS,[1] and SHERRY MCFEATHERS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on plaintiff's motion to reinstate his previously filed July 29, 2014, motion for summary judgment, which the court construes as a renewed motion for summary judgment (DE 96). Also before the court is defendants' motion for summary judgment (DE 98), and plaintiff's motion for oral argument (DE 102). Plaintiff responded to defendants' motion for summary judgment, but defendants did not respond to plaintiff's motions. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment, denies plaintiff's motion for summary judgment, and denies plaintiff's motion for oral argument.

**STATEMENT OF THE CASE**

On June 5, 2013, plaintiff, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 naming Central Prison Warden Kenneth Lassiter ("Lassiter") and Central Prison

---

[1] The party plaintiff identified as A. Blanks informed the court that his full name is Averell Blanks. The clerk of court is DIRECTED to amend the court's docket to reflect this change.

Assistant Warden Van McCullough ("McCullough") as defendants. Plaintiff alleged that defendants violated his rights pursuant to the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution as well as the Eighth Amendment to the United States Constitution in connection with his placement on a special management or "nutraloaf diet." Plaintiff, an adherent to the Jewish faith, also alleged that the nutraloaf diet violated his rights pursuant to the First Amendment to the United States Constitution[2] because he was approved for a kosher diet during this time period. Finally, plaintiff contested the constitutionality of a disciplinary conviction for an A19 disciplinary offense that he received for spraying another inmate with feces. As relief, plaintiff sought declaratory, compensatory, and punitive damages.

After filing his complaint, plaintiff filed a declaration from inmate Chardan Whitehead ("Whitehead") stating that Whitehead was placed on the nutraloaf diet for a single day after hitting a correctional officer with a food tray. Plaintiff also submitted a declaration from inmate Saquan Devel Hussey ("Hussey") stating that Hussey observed fellow inmate Gregory McClain throw feces on a correctional officer, but that inmate McClain was not placed on a nutraloaf diet.

On December 9, 2013, the court conducted a frivolity review of plaintiff's complaint and amended claims, and allowed plaintiff to proceed with his claims. Plaintiff then filed a motion to admit evidence, three motions to compel discovery, and two motions for entry of default. On April 8, 2014, the court denied plaintiff's motion to admit evidence and denied plaintiff's motions to compel and his motions for entry of default as premature. On April 22, 2014, defendant Lassiter filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) for improper service

---

[2] Plaintiff makes clear in his response to defendants' motion for summary judgment that he is not pursuing a claim pursuant to the Religious Land Use of Institutionalized Persons Act of 2000 ("RLUIPA") 42 U.S.C. §§ 2000cc-1, et seq. (Pl.'s Resp. (DE 104), p. 2.) Thus, the court construes plaintiff's kosher diet claim to be solely pursuant to the First Amendment to the United States Constitution.

2

of process, which was fully briefed. Then, on April 29, 2014, acting *sua sponte,* the court reinstated plaintiff's motions for entry of default and directed defendant McCullough to show cause as to why the court should not make an entry of default against him. Defendant McCullough timely responded to the show cause order.

Plaintiff subsequently filed a motion for an extension of time to effect service of process, a motion for a preliminary hearing pursuant to Federal Rule of Civil Procedure 12(d), and, on July 29, 2014, a motion for summary judgment. Plaintiff attached to his motion for summary judgment the North Carolina Department of Public Safety's ("DPS") policies and procedures governing special management meals, a portion of the disciplinary record for his A19 offense, and a DPS memorandum regarding the implementation of a kosher menu on October 10, 2012. On August 5, 2014, the court entered an order denying as moot defendant Lassiter's motion to dismiss based on improper service. The court also denied plaintiff's motions for entry of default. Finally, the court denied as moot plaintiff's motion for a preliminary hearing pursuant to Rule 12(d) as well as his motion for an extension of time to obtain service. On September 4, 2014, the court entered a case management order setting forth deadlines governing, *inter alia*, discovery and dispositive motions.

On November 7, 2014, the court entered an order denying as premature plaintiff's motion for summary judgment. A few days later, plaintiff filed a motion for leave to amend his complaint to supplement his allegations and to add correctional unit manager Averell Blanks ("Blanks") and nurse Jane Doe as defendants. The court granted plaintiff's motion on December 12, 2014, and directed the North Carolina Attorney General to assist plaintiff in ascertaining the correct name for the Jane Doe defendant by providing plaintiff with the name of the nurse who authored a medical noted referenced by plaintiff.

3

On January 8, 2015, plaintiff filed a motion to determine the sufficiency of defendants' discovery responses, which the court construed as a motion to compel discovery, and then filed a motion for a preliminary injunction. On February 4, 2015, the court entered an order denying plaintiff's motion for a preliminary injunction and directed defendants to respond to plaintiff's motion to determine the sufficiency of defendants' discovery responses. Defendants responded to plaintiff's motion to compel on February 18, 2015.

On February 24, 2015, the court entered an order directing the attorney general to show cause as to why he failed to respond to the court's December 29, 2014, order directing him to assist plaintiff in discovering the identity of the Jane Doe defendant. Three days later, the attorney general responded to the show cause order and identified the unknown nurse as Sherry McFeathers ("McFeathers"). On March 20, 2015, the court entered an order finding that the attorney general had sufficiently shown cause as to his failure to respond to the court's December 29, 2014, order. The court also directed the clerk of court to add McFeathers as a defendant in this action. Finally, the court granted in part and denied in part plaintiff's motion to compel. The court granted the motion as to plaintiff's request that defendants provide him with inmate Burgess' disciplinary report, but denied the remainder of plaintiff's motion.

On June 5, 2015, plaintiff filed the instant motion for summary judgment, to which plaintiff attached a copy of his July 29, 2014, motion for summary judgment and exhibits. Plaintiff's exhibits include his special management diet history, a copy of DPS's Health Policy and Procedures Manual for special management meals, DPS' nutraloaf recipe, and portions of plaintiff's disciplinary record related to his A19 offense for spraying feces, arising out of the facts related to this case.

4

On June 5, 2015, defendants filed a motion for summary judgment arguing that plaintiff is unable to establish a constitutional violation. Alternatively, defendants assert the affirmative defense of qualified immunity. In support of their motion, defendants submit the affidavit of defendant Blanks, Jacqueline Parker, and Nurse Bolanle Ogunnaike, as well as a portion of plaintiff's medical records, plaintiff's housing assignment record, plaintiff's disciplinary history, plaintiff's disciplinary record related to his A19 disciplinary conviction, inmate summary record, administrative remedy records, North Carolina Policies and Procedures governing special management meals, DPS's nutraloaf recipe, plaintiff's special management diet history, and Health Services Policy and Procedures Manual for special management meals.

## STATEMENT OF FACTS

The undisputed facts are as follows. On March 8, 2012, plaintiff began practicing Judaism and receiving kosher meals exclusively. (Compl. p. 3.) On August 24, 2012, plaintiff and fellow inmate, Bryant Burgess, sprayed each other with liquid feces while participating in recreation on the segregation unit at Central Prison. (Blanks Aff. ¶ 6 and Ex. C.) On August 28, 2012, Central Prison staff placed plaintiff on a special management or "nutraloaf diet." (Plaintiff's Compl., p. 3; Parker Aff. ¶ 7.) DPS policies and procedures provide that the special management diet is a behavior modification tool that is not intended for punishment. DPS Policies and Procedures, Chpt. F, § .3203(e). Specifically, DPS policy provides that an inmate housed in a segregation unit may be placed on a special management diet for engaging in the following conduct: "Throwing food items, human waste, liquids, spitting inappropriately within the cell, through or at the door on any other person." Id.

5

Plaintiff began his special management diet on August 28, 2012. (Blanks Aff. ¶ 6 and Ogunnaike Aff. Ex. B.) Plaintiff's nutraloaf diet consisted of three nutraloaf meals per day, each served with one eight ounce carton of milk. (Plaintiff's Compl., p. 3; Parker Aff. ¶ 7.) DPS's nutraloaf meal has been analyzed by dieticians and found to meet the requirements of the Dietary Reference Intakes ("RDI") recommended by the Food and Nutrition Board and National Research Counsel. (Parker Aff. ¶ 7.) The meal generally is designed to meet the basic nutritional needs of an adult inmate by providing approximately 2550 calories per day and consists of foods such as beans, carrots, turnip greens, eggs, grits, and oats. (Parker Aff. ¶ 7 and Ex. B.) The North Carolina Department of Public Safety ("DPS") employees prepare and serve the nutraloaf meal at Central Prison in brown paper bags without utensils. (Parker Aff. ¶ 8.)

On August 29, 2012, nurse Bolanle Ogunnaike, the sick-call nurse on duty, medically screened plaintiff at approximately 11:17 a.m. (Ogunnaike Aff. ¶ 6.) Later that day, defendant McFeathers, a nurse, saw plaintiff and noted that plaintiff weighed 147 pounds and that plaintiff stated that he could not be on the nutraloaf diet because he was approved to receive a kosher diet. (Id. and Ex. A, part 3, p. 21; Pl.'s Am. Compl. (DE 66), Ex. D.) In response, defendant McFeathers reviewed the contraindication for nutraloaf and informed plaintiff that he did "not have the contraindication." (Id.) As a result, McFeathers advised plaintiff to consume the meals provided. (Id.) She also instructed plaintiff to report to medical staff if he refused to eat the meals provided. (Id.)

Plaintiff remained on the special management nutraloaf diet until September 4, 2012. (Blanks Aff. ¶ 6 and Ogunnaike Aff. Ex. B.) Plaintiff had a daily health evaluation during this time period, and the officer on duty each day noted that plaintiff had no complaints. (Ogunnaike Aff. Ex.

6

A part 5, p. 4.) Plaintiff, additionally, did not file any sick call requests related to his diet during the seven days he was on the nutraloaf diet. (Id. Ex. A.) Plaintiff, however, states in his complaint that he could not "stomach" the nutraloaf "due to its vileness." (Compl. p. 4.)

Meanwhile, on August 29, 2012, plaintiff filed a grievance which stated the following:

> [I] was recently put on Nutraloaf. prior, had been on religious kosher diet. Nutraloaf NOT kosher so am not suppose 2 be on that diet. Staff cannot deny me my religious meals 4 punishment, violate 1st amend. b/c punishment not safety regulation. Putting me on Nutraloaf is no deterrent/safety measure against violence & was not implemented w/prison safety/security in mind. Nutraloaf punishment only. Unconstitutional & unacceptable. Never re-registered or changed religion or diet. on my own. Am being forced w/Nutraloaf. In any event, am too little 2 go whole week w/o sustenance & actually cannot stomach Nutraloaf, have tried. Am 5ft 10-6ft tall, weight only 147 pounds. Will starve 4 whole 7 days. Will prolly lose 10 whole pounds. Cruel and Unusual punishment.

(Compl. Attach. p. 1.) (no alterations from the original). In response, prison officials conducted an investigation and stated: "Inmate Tyler you were approved to be placed on a Special Management Meal on 8/29/12 for your disruptive behavior and the safety and security of the institution, throwing human waste at another Inmate on 8/29/12 [sic]. By your behavior you chose not to eat the kosher diet." (Id. p. 2.)

As a result of the incident with inmate Burgess, plaintiff was charged with a code A-19 disciplinary offense on August 25, 2012. (Blanks Aff. Ex. C., p. 1.) On August 30, 2012, the disciplinary hearing officer conducted a hearing. (Id. p. 2.) The summary of the record developed at plaintiff's disciplinary hearing is as follows:

> Inmate advised of his rights and a summary was read. The inmate pled not guilty to the charge. A summary of the case is as follows; Officer Press states that on 8/24/12 at approx. 0955hrs he was assigned to BC2C when he observed [plaintiff] spray inmate Burgess with what appeared to be fecal matter while the inmates were in the

7

> dayroom recreation cells. Officer Hunt states that he responded to the call and noted both inmate Tyler and Burgess with fecal matter on them. The inmate refused to make a written statement however stated verbally that he didn't throw anything on anybody. Based on the reporting party's statement and the evidence provided I am finding the inmate guilty with presumptive punishment imposed to deter this type of behavior in the future. Appeal rights explained and a form was provided.

(Id.) Following plaintiff's conviction for the A-19 disciplinary offense, the DHO sanctioned plaintiff with the following: (1) 60 days segregation; (2) 50 hours of extra duty; (3) 180 days suspension of canteen and visitation privileges; and (4) 6 months of limited draw. (Id. at 1.)

On October 10, 2012, Nurse Robin Mullins ("Mullins") examined plaintiff in response to a sick call plaintiff made in which he requested vitamin C and D supplements. (Pl.'s Am. Compl. (DE 66) Ex. E.) Mullins referred plaintiff to a dietician, and it was determined that plaintiff's vitamin D level was low. (Id.) Medical staff prescribed plaintiff vitamin D supplements for the time period of October 31, 2012, through June 30, 2013. (Id. Exs. E-L.)

## DISCUSSION

A.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Defendants assert the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first determines whether defendants violated plaintiff's constitutional rights.

    1.    Eighth Amendment

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"–and the second prong is subjective–the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (quotations omitted).

The court begins with the objective prong of the Eighth Amendment test. The court first must determine whether plaintiff's conditions of confinement objectively deprived him of minimal

9

civilized necessities such as adequate food, clothing, shelter, medical care, or physical safety. See In re Long Term Admin. Segregation of Inmates Designated as Five Precentors ("Five Precentors"), 174 F.3d 464, 472 (4th Cir. 1999). "[F]or prison conditions to rise to the level of unconstitutional punishment, there must be [objective] evidence of a serious medical and emotional deterioration attributable to the challenged condition." Id. at 1380.

Here, the record reflects that plaintiff was served nutraloaf for approximately seven days–from August 28, 2012, through September 4, 2012. (Blanks Aff. ¶ 6; Ogunnaike Aff.¶ 5, Ex. B.) Plaintiff vaguely asserts that he lost an unspecified amount of weight while on the nutraloaf diet and that he suffered hunger pains. Plaintiff also submitted evidence reflecting that he was provided supplemental vitamin D to treat a vitamin D deficiency. (Pl.'s Am. Compl. (DE 66) Exs. E-L.) However, plaintiff has not presented any evidence to support his alleged weight loss or to establish that his vitamin D deficiency was related to his seven-day nutraloaf diet. Plaintiff further has not presented any evidence that he otherwise suffered from any significant injury or that he was exposed to any substantial risk of harm while on the nutraloaf diet. Based upon the foregoing, plaintiff is unable to establish the objective prong of the Eighth Amendment test.

The court next turns to the subjective prong of the Eighth Amendment test-whether defendants acted with deliberate indifference. It is well-settled that inmates have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to the health and well being of the inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (internal quotation marks and citations omitted). However, the United States Constitution does not guarantee food that is prepared and served in a culinarily pleasing manner. See Harrison v. Moketa, Motycka, 485 F. Supp.2d 652, 656 (D.S.C. 2007), aff'd 235 F.

10

App'x 127 (4th Cir. 2007); see also, Kemp v. Drago, No. C/A No. 1:12-1481-JFA-SVH, 2013 WL 4874972, at *9 (D.S.C. Sept. 11, 2013) ("The Constitution does not guarantee [] food that is prepared and served in a culinarily-pleading manner."), aff'd, 558 F. App'x 328 (4th Cir. 2014). Additionally, the act of placing an inmate on a nutraloaf diet alone is not a constitutional violation. See Thomas v. Warner, 237 F. App'x 435, 438 (11th Cir. 2007) (finding that the plaintiff did not state an Eighth Amendment claim based on his dietary restrictions for high blood pressure and being fed "nutraloaf" for 20 days during isolation.); Gates v. Huibregtse, 69 F. App'x 326, 327 (7th Cir. 2003) (finding that inmate's claim, that placement on a nutraloaf diet for misconduct is cruel and unusual punishment, frivolous and that while food served in prison must be nutritious, it does not have to be delicious or appetizing); LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir.1993) (finding that inmates' complaint regarding the use of nutraloaf does not rise to the threshold level of a constitutional deprivation); see also, McKinnedy v. Pate, No. 6:13–CV–01793–GRA, 2013 WL 5517905, at *4 (D.S.C. Oct.1, 2013) ("Plaintiff's claims about the use of a nutriloaf diet also fail to show a constitutional violation."); see also, Tyler v. Washington, No. 5:14-CT-3126-H (E.D.N.C. July 9, 2014 & Oct. 9, 2014) ("Serving Nutraloaf as a form of punishment to a prisoner does not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment, unless it is not nutritious or otherwise causes serious sickness.") (citations omitted), aff'd, 599 F. App'x 120, 121 (4th Cir. 2015); Brooks v. James, No. 2:10-2010-MJP-BHH, 2011 WL 1630903, at *5 (D.S.C. Apr. 7, 2011) ("The nutraloaf itself poses no constitutional issues, as a nutritional matter or as a disciplinary one.").

Applying these principles, the court finds that plaintiff fails to establish that defendants acted with deliberate indifference. First, plaintiff has set forth no evidence to establish that defendants

11

placed plaintiff on nutraloaf maliciously or sadistically for the sole purpose of causing harm. Rather, the record reflects that the nutraloaf diet was nutritionally adequate for an adult male, and that plaintiff was medically screened and approved shortly after beginning the diet. (Parker Aff. ¶ 7; Ogunnaike Aff. ¶ 5; Ex. A part 3, p. 4.) In the course of his medical evaluation, nurse McFeathers specifically instructed plaintiff to report to medical if he refused to eat the meals provided, but there is no evidence that plaintiff filed any complaint or sick-call request to medical staff during the time he was on the diet. See (Ogunnaike Aff. Ex. A, part 3, p. 21.) The record further reflects that plaintiff's health was monitored daily while on the diet. (Id. p. 4.) Based upon the foregoing, plaintiff has failed to establish that any defendant acted with deliberate indifference. Because plaintiff failed to establish either the objective or subjective prongs of the Eighth Amendment test, defendants are entitled to qualified immunity and plaintiff's motion for summary judgment is DENIED with respect to this claim.

　　　　2.　　Due Process Claims

Plaintiff asserts two due process claims arising out of the facts in this case. Plaintiff first asserts that defendants violated his due process rights because they placed him on the special management diet two days prior to the adjudication of his A19 disciplinary offense for spraying feces. The Sixth Circuit Court of Appeals has expressly ruled that "being fed a food loaf does not implicate a due process liberty interest." Griffis v. Gundy, 47 F. App'x 327, 328 (6th Cir. 2002) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995) and Turnboe v. Gundy, 25 F. App'x 292 (6th Cir. 2001)); McEachin v. McGuinnis, 357 F. 3d 197, 200-201 (2d Cir. 2004) (affirming district court's finding that placement of Muslim inmate on restrictive diet loaf for one week during Ramadan did not pose an "atypical and significant" hardship sufficient to implicate the plaintiff's

12

due process rights under Sandin); see also, Blount v. Johnson, No. 7:05CV00556, 2006 WL 335606, 3at * 6 (W.D. Va. Feb. 14, 2006) (dismissing the plaintiff's claim that he was entitled to a hearing before being placed on diet loaf) (citing Gates v. Huibregtse, 69 F. App'x 326, 328 (7th Cir. 2003)). In addition, failure to follow prison policies and procedures does not give rise to a due process violation. See, e.g., Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"). Thus, plaintiff failed to establish a constitutional violation for this claim, and defendants are entitled to qualified immunity for this due process claim.

In his second due process claim, plaintiff challenges his disciplinary proceedings related to the adjudication of his A19 offense. To recover monetary damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, the plaintiff must show that the underlying conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).[3] Plaintiff's disciplinary conviction has not been reversed, expunged, declared invalid, or called into question. Therefore, plaintiff's allegations attacking his disciplinary conviction fail to state a claim pursuant to § 1983.

To the extent plaintiff seeks to recover monetary damages for alleged due process violations which occurred in his disciplinary proceedings, this claim too lacks merit. The Supreme Court has

---

[3] Although Heck concerned an action for recovery based on due process violations in a criminal conviction, the Supreme Court extended its reasoning to claims brought by an inmate alleging constitutional deficiencies in prison disciplinary proceedings which resulted in the loss of good-time credits. See Edwards v. Balisok, 520 U.S. 641, 645 (1997).

mandated certain procedural safeguards when loss of statutory good-time credit is at issue. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Here, plaintiff's disciplinary conviction did not result in the loss of good-time credit. (Blanks Aff. Ex. C, p. 1.) Rather, plaintiff's disciplinary conviction resulted in his placement on administrative segregation, extra duty, suspension of visitation privileges, and limited draw, which do not implicate a constitutionally protected liberty interest. See Berati v. Smith, 120 F.3d 500, 502 (1997) ("confinement to administrative segregation does not implicate a liberty interest"); Bliss v. United States Attorney General, No. 8:07-160-TLW-BHH, 2009 WL 3105257, at *5 (D.S.C. Sept. 23, 2009) (finding no due process protections where inmate lost only his job and telephone privileges). Thus, plaintiff failed to establish a due process violation arising out of his disciplinary proceedings, and defendants are entitled to qualified immunity for this claim. Based upon the foregoing, defendants' motion for summary judgment is GRANTED as to plaintiff's due process claims, and plaintiff's motion for summary judgment is DENIED.

      3.      First Amendment

Plaintiff contends that defendants violated his First Amendment rights because he was disciplined with a special management diet for the time period of August 28, 2012, through September 4, 2012, rather than receiving kosher meals. The Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. The United States Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his

14

exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safely, 482 U.S. 78, 89–91 (1987).

In their motion for summary judgment, defendants contend that plaintiff has not established that his practice of Judaism was substantially burdened by the provision of a nutraloaf diet for seven days. In conducting a "substantial burden" analysis, a court should not judge the significance of a particular belief or practice to the religion at issue. Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005); Lovelace v. Lee, 472 F.3d 174, 187 n. 2 (4th Cir. 2006). Rather, a plaintiff must demonstrate that a governmental entity substantially pressured him to modify his behavior and to violate his religious beliefs in order to demonstrate that his religious practice has been substantially burdened. See Lovelace, 472 F.3d at 187. That said, a plaintiff is not required, as part of this prima facie showing, to prove that the exercise at issue is required by or essential to his religion. See Cutter, 544 U.S. at 725 n. 13; Krieger v. Brown, 496 F. App'x 322, 325 (4th Cir. 2012).

The court focuses its inquiry in this case on the substantial burden analysis. Here, plaintiff simply states that a kosher diet is a "staple of Judaism." (Mem. in Supp., DE 51 p. 5.) (internal quotation omitted). He fails to allege that his practice of Judaism requires a kosher diet or to state why the vegetarian nutraloaf he was served violated his religious beliefs. Plaintiff, instead, focuses on the unpalatability and alleged vileness of the nutraloaf, which are issues wholly unrelated to plaintiff's practice of Judaism. In essence, plaintiff has failed to provide any evidence whatsoever—aside from his unreasoned say so-to establish that the seven-day nutraloaf diet forced

15

him to modify his behavior or violate his religious beliefs. See Krieger, 496 F. App'x at 326 ("Because Krieger did not show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs, the district court correctly determined that Krieger failed to establish a prima facie case under RLUIPA."); DeSimone v. Bartow, 355 F. App'x 44, 46 (7th Cir. 2009) ("noting the insufficiency of a plaintiff's 'unreasoned say-so' to create a triable issue") (quoting Borzych v. Frank, 439 F.3d 388, 390 (7th Cir. 2006))); Berryman v. Granholm, 343 F. App'x 1, 6 (6th Cir. 2009) (finding that temporary suspension from the kosher meal program for disciplinary purposes did not violate the constitution); Norwood v. Strada, 249 F. App'x 269, 272 (3d Cir. 2007) (finding that the denial of seven consecutive religious meals did not substantially burden the plaintiff's free exercise rights); see also, Tyler, No. 5:14-CT-3126-H (E.D.N.C. July 9, 2014 & Oct. 9, 2014) (dismissing plaintiff's religious-based claims arising out of his placement on a nutraloaf diet for one day); Evans v. Jabe, No. 11-CV-0104, 2014 WL 202023, at *8 (W.D. Va. Jan. 17, 2014) ("[The plaintiff] fails to establish that his receipt of six incomplete or tardy breakfast trays after daylight fasting began placed a substantial burden on his celebration of Ramadan or participation in the thirty-day fast."); Odom v. Dixon, No. 04-CV-0889, 2008 WL 466255, at *11 (W.D.N.Y. Feb. 15, 2008) (finding that plaintiff's allegation that the defendants failed to provide him with kosher meals on five of the 15 days he was in keep lock confinement did not give rise to a cognizable constitutional violation); Frazier v. Ferguson, Civil Action No. 04-5140, slip op., 2006 WL 2052421, at *4 (W.D. Ark. 2006) (finding no substantial burden under RLUIPA where Seventh-day Adventist inmate received vegetarian diet and had to discard some items that did not comport with his religious preference for vegan diet). Thus, plaintiff failed to establish that the nutraloaf diet at issue substantially burdened his practice of Judaism.

16

Plaintiff, additionally, failed to establish that defendants intentionally violated his constitutional rights. See Lovelace, 472 F.3d at 201 (holding that only intentional conduct is actionable under the Free Exercise Clause). Rather, the record reflects that defendants were simply following policy established DPS policy stating that an inmate may be placed on a special management diet for throwing human waste. See DPS Policies and Procedures, Chpt. F, § 3203(e); Griffith v. Bird, No. 3:06CV308-1-MU, 2009 WL 3722804 (W.D.N.C. Nov. 3, 2009) (finding no RLUIPA violation where defendant did not act intentionally or with deliberate indifference to deny plaintiff unidentified Wicca items), aff'd, 410 F. App'x 713 (4th Cir. 2011). Based upon the foregoing, plaintiff failed to establish a First Amendment violation. Because plaintiff failed to establish a First Amendment violation, defendants are entitled to qualified immunity for this claim.

    4.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To establish an Equal Protection Claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.

Here, plaintiff hinges his equal protection claim on the declarations of inmates Chardan Whitehead and Saquan Devel Hussey. Plaintiff seeks to use such declarations to illustrate that he was treated differently from other similarly situated inmates. With respect to Whitehead's declaration, Whitehead states that he did in fact receive a special management diet for a period of

17

one day after hitting an officer with a food tray. (DE 9.) The fact that Whitehead received only one day of the nutraloaf diet, as opposed to plaintiff's seven days does not reflect that plaintiff was treated differently from similarly situated inmates because plaintiff was a state inmate at the time he received the special management diet and Whitehead was a pretrial detainee. (Id.) Further, plaintiff presented no evidence suggesting that the two inmates had similar disciplinary histories.

As for the declaration from Saquan Devel Hussey, Hussey states that he observed another inmate throw feces and that the inmate did not receive a nutraloaf diet. (DE 11.) Such declaration, at best, alleges "an isolated and minor incident of differing treatment among prison inmates, which is insufficient to support a claim of unlawful discrimination." Gadson v. Fuson, No. 3:13-1050, 2014 WL 1631002, at *3 (M.D. Tenn. Apr. 24, 2014); see Brown v. Warner, No. 2:13-CV-00130-JTR, 2014 WL 1682867, at *9 (E.D. Wash. Apr. 29, 2014). Moreover, plaintiff has presented no evidence that defendants acted with the intent to discriminate. Thus, plaintiff has failed to make the requisite showing, and the court GRANTS summary judgment to defendants and DENIES plaintiff's motion for summary judgment for this claim.

## CONCLUSION

Based upon the foregoing, the court GRANTS defendants' motion for summary judgment (DE 98), DENIES plaintiff's motion for summary judgment (DE 96), and DENIES plaintiff's motion for oral argument (DE 102), because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process. The clerk is DIRECTED to replace A. Blanks with Averell Blanks in the caption of this court's docket, and then to close this case.

SO ORDERED, this the 3rd day of March, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge